UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

TEMITOPE SEKINAT
MAJEKAODUNMI,

                    Petitioner,

        v.

BRUCE SCOTT et al,

                    Respondents.

CASE NO. 2:26-cv-01026-TL

ORDER ON PETITION FOR WRIT
OF HABEAS CORPUS

This matter is before the Court on Petitioner Temitope Sekinat Majekaodunmi's Petition

for Writ of Habeas Corpus. Dkt. No. 1. Respondents are Bruce Scott, Warden, Northwest ICE

Processing Center ("NWIPC") and Markwayne Mullin,[1] Secretary, United States Department of

Homeland Security ("DHS"). Petitioner, who is presently detained at NWIPC (*id*. at 1), seeks her

immediate release. *Id*. at 12. Having reviewed the Petition, Respondent's Return[2] (Dkt. No. 4),

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Kristi Noem was substituted by Respondent for Department of Homeland Security Secretary Markwayne Mullin. *See* Dkt. No. 4 at 1 n.1.

[2] As used in this order, the term "Respondent" does not include Respondent Scott or NWIPC. Respondents Scott and NWIPC have not responded to the habeas petition and have not appeared in this case.

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS – 1

Petitioner's Traverse (Dkt. No. 7), and the relevant record, the Court GRANTS the Petition and ORDERS Petitioner's immediate release.

## I.   BACKGROUND

On June 21, 2014, Petitioner and her daughter appeared at the San Ysidro, California, port of entry to apply for admission to the United States. Dkt. No. 6-1 (2014 DHS Form I-213) at 3. Upon questioning from an immigration officer, Petitioner stated she was she was eight months pregnant, her husband had died the year prior, and that she and her daughter had fled their country of origin, Nigeria, after Petitioner's mother-in-law attempted to convince Petitioner to marry Petitioner's late husband's younger brother and to have her young daughter circumcised. *Id*. Petitioner explained that, as a result, she fled her mother-in-law's home in Nigeria with the help of a nun from a Catholic church and that she intended to apply for asylum. *Id*. at 4. The immigration officer determined Petitioner was inadmissible under Section 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act ("INA") and took Petitioner and her daughter into custody. *Id*. On June 27, 2014, Petitioner and her daughter were served a Notice to Appear and paroled into the United States until November 10, 2016, pending removal proceedings. *Id*.; *see also* Dkt. No. 6-2 (2023 DHS Form I-213) at 3.

On January 4, 2016, an immigration judge ("IJ") terminated Petitioner's removal proceedings without prejudice to allow Petitioner to pursue relief with United States Citizenship and Immigration Services ("USCIS"). Dkt. No. 5 (Andron Decl.) ¶ 8.[3] On January 25, 2017, DHS appealed the IJ's termination order and the Board of Immigration Appeals ("BIA") sustained the appeal and remanded the case to the IJ. Dkt. No. 6-5 (Order of the BIA) at 7. On

---

[3] Many of the facts recounted here are based on the declaration of Deportation Officer Robert Andron (who does not claim to have personal knowledge of most of the facts he reports) or on hearsay contained within narrative portions of documents in Petitioner's immigration record. The Court makes no findings as to whether these are true and correct statement of fact but does note that they appear to be uncontested by the Parties.

January 30, 2018, a Form I-130 Petition for Noncitizen Relative was filed for Petitioner as beneficiary of the spouse of a United States citizen. *Id*. ¶ 10; *see also* Dkt. No. 6-2 at 3. On December 10, 2018, Petitioner's removal case was terminated without prejudice. Dkt. No. 5 ¶ 11; *see also* Dkt. No. 6-2 at 3. Next, on April 29, 2019, Petitioner filed a Form I-485 Application to Register Permanent Residence or Adjust Status with USCIS. Dkt. No. 5 ¶ 12; *see also* Dkt. No. 6-2 at 3. On May 10, 2022, USCIS revoked approval of Petitioner's form I-130 and denied Petitioner's form I-485 application because it found that Petitioner's marriage was fraudulent and entered into solely for the purpose of obtaining an immigration benefit. Dkt. No. 5 ¶ 13; *see also* Dkt. No. 6-2 at 3.

In 2023,[4] Petitioner was convicted of Conspiracy to Commit Wire Fraud and sentenced to ten months in prison. Dkt. No. 6-2 at 3. On October 27, 2023, Petitioner was transported from the Bureau of Prisons to the custody of ICE. Dkt. No. 5 ¶ 16. That same day, Petitioner was served a new Notice to Appear ("NTA"), again charging her with inadmissibility under Section 212(a)(7)(A)(i)(I), this time adding an additional ground of inadmissibility under Section 212(a)(2)(A)(i)(I), for committing a crime of moral turpitude. Dkt. No. 6-3 (Notice to Appear) at 3, 5.

Petitioner has been in detention at NWIPC since October 27, 2023. Dkt. No. 5 ¶ 16. On March 13, 2024, an IJ ordered Petitioner's removal. Dkt. No. 6-4 (Order of the Immigration Judge) at 12. Petitioner appealed her removal order, and on March 3, 2025, the BIA dismissed the appeal. Dkt. No. 6-5 (BIA Appeal Order) at 7. Next, Petitioner filed two appeals to the Ninth Circuit. These appeals are still pending. Along with her appeal, Petitioner requested a stay of

---

[4] DHS documents provide two different dates for Petitioner's conviction and sentencing—March 3, 2023, and October 23, 2023. *See* Dkt. No. 6-2 at 2–3. The more logical date is March 3, 2023, but it is also possible Petitioner served most of her custodial sentence prior to her conviction. The record on this point is unclear.

removal, but this request was denied on July 18, 2025. Dkt. No. 6-7 (Order of the Ninth Circuit Court of Appeals) at 2. On August 26, 2025, Petitioner appeared for a bond hearing in immigration court. At the bond hearing, the IJ determined that she did not have jurisdiction to set bond because Petitioner was subject to mandatory detention under section 235(b)(1) and (b)(2)(A) of the INA, but she did not find that Petitioner was a flight risk or a danger to the community. Dkt. No. 6-6 (Bond Order of the Immigration Judge) at 2.[5] Petitioner did not appeal the IJ's bond decision. Dkt. No. 5 ¶ 23.

Petitioner filed the instant habeas petition seeking relief under 28 U.S.C. § 2241 on March 25, 2026. Dkt. No. 1. Petitioner argues several grounds for her release, including: (1) her detention is prolonged and, therefore, violates *Zadvydas v. Davis*, 533 U.S. 678 (2001) (Dkt. No. 1 at 6); (2) her continued detention is punitive in violation of due process (*id.*); (3) her detention causes severe and irreparable harm to her medically vulnerable child (*id.* at 8); (4) her detention undermines her pending U-Visa application (*id.* at 9); (5) her detention is not related to any legitimate government purpose (*id.*); (6) her detention violates due process under *Mathews v. Eldridge*, 424 U.S. 319 (1976); and (7) her detention has become indefinite, in violation of the Constitution (*id.* at 11). The matter is fully briefed and ripe for the Court's review.

## II.    LEGAL STANDARD

"Writs of habeas corpus may be granted by . . . the district courts . . . within their respective jurisdictions." 28 U.S.C. § 2241(a). Habeas petitioners must prove by a preponderance of the evidence that they are entitled to relief, *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir.

---

[5] The IJ's determination that Petitioner was at that time detained under INA Section 235(b)(2)(A)—that is, 8 U.S.C. 1225(b)(2)(A)—was incorrect as a matter of law. On August 26, 2025, the date of her bond hearing, Petitioner was within the 90-day removal period, and her detention (though indeed mandatory at that time) was governed by 8 U.S.C. § 1231(a)(2).

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS – 4

2004)—that is, that they are "in custody in violation of the Constitution or laws or treaties of the United States," 8 U.S.C. § 2241(c).

### III.    DISCUSSION

**A.    Continued Detention under *Zadvydas***

As a noncitizen with a final order of removal, Petitioner is detained under 8 U.S.C. § 1231. Under Section 1231(a)(1), "when [a noncitizen] is ordered removed, the Attorney General shall remove the [noncitizen] from the United States within a period of 90 days (in this section referred to as the 'removal period')." 8 U.S.C. § 1231(a)(1)(A). Section 1231(a)(2) mandates the detention of the noncitizen during the removal period, *id.* § 1231(a)(2)(A), and Section 1231(a)(6) authorizes the continued detention of certain noncitizens after the expiration of the removal period. Although there is no temporal limit on the length of detention in the statute, the Supreme Court has held that the INA does not authorize "indefinite, perhaps permanent, detention" of noncitizens subject to final orders of removal under Section 1231(a)(6), *Zadvydas*, 533 at 699, instead construing the statute to contain an "implicit 'reasonable time' limitation," *id.* at 682. "[F]or the sake of uniform administration in the federal courts," the Supreme Court recognized six months as that time limitation. *Id.* at 701. Ultimately, the Supreme Court determined that it is "presumptively reasonable" for DHS to detain a noncitizen for six months following entry of a final removal order while it works to remove the individual from the United States. *Id.* However, "[a]fter this 6-month period, once the [noncitizen] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* If the Government fails to rebut the noncitizen's showing, the noncitizen is entitled to habeas relief. *Id.* Further, "as the prior period of postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Id.*

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS – 5

In the present case, the removal period began on July 18, 2025, when the Ninth Circuit denied her request for a stay of removal. *See* Dkt. No. 6-7 at 2; *Prieto-Romero v. Clark*, 534 F.3d 1053, 1060 (9th Cir. 2008) ("[W]hen [a noncitizen] files a petition for review of [her] removal order and we *decline* to grant a stay of removal, . . . the removal period commences immediately[.]"). Petitioner has been in detention for over nine months since her removal became administratively final. Respondent agrees that the removal period began on July 18, 2025 (Dkt. No. 4 at 10), and that "Petitioner has now been detained beyond" both the 90-day and six-month periods (*id*. at 12). Therefore, at the first step of the *Zadvydas* analysis, Petitioner's detention is no longer presumptively reasonable.

Next, Petitioner bears the initial burden to provide good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future. Respondent argues she has not carried this burden because "[s]he offers no evidence, such as diplomatic correspondence refusing travel documents, a history of rejected repatriation attempts by Nigeria, or specific country-conditions reports demonstrating non-cooperation, that removal to Nigeria is not reasonably foreseeable." Dkt. No. 4 at 11. Respondent asserts that "Nigeria routinely issues travel documents and accepts repatriation of its nationals subject to final removal orders." *Id*. The Court agrees that the record gives no cause to doubt that Petitioner *can* be removed to Nigeria in the reasonably foreseeable future. But what matters is not the likelihood that she *can* be removed, it's the likelihood that she *will* be removed. Here, Petitioner has provided good reason to believe that she will not: her post-order detention has lasted significantly longer than the presumptively reasonable six-month period, and the government appears to have taken no action to remove her during those nine months, during which, as Respondent points out, Petitioner had a final order of removal, a stay of removal had been denied, and there was no apparent reason Petitioner could not be removed to Nigeria. *See* Dkt. No. 4 at 11. Respondents'

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS – 6

past inaction, particularly as her detention has lasted significantly longer than six-months, is "good reason to believe" they will continue not to act in the future. The burden thus shifts to the government to show that Petitioner's removal to Nigeria is reasonably likely in the foreseeable future.

Respondent does not carry this burden. Respondent argues that "removal to Nigeria remains reasonably foreseeable" (Dkt. No. 4 at 12) yet the record is noticeably silent as to why. Respondent makes no effort to show the Court when Petitioner's removal to Nigeria might occur, nor that—in this nine-month period—the government has even taken steps to effectuate removal. *See id*. at 11–12; *see also* Dkt. No. 7 at 2–3 ("Respondents . . . provide no evidence of any actual efforts" and "[t]here is no indication that travel documents have been requested or obtained, no evidence of communication with Nigerian authorities, and no scheduled removal."). Again, there is no evident reason why the government *cannot* remove Petitioner to Nigeria. In that sense, this case differs from cases like *Zadvydas* itself, in which detention has become indefinite because removal is legally or practically impossible. But legal and practical impediments to removal are not the only way for removal to become "not reasonably foreseeable." Removal can also become "not reasonably foreseeable" if the government has the legal and practical ability to remove a person to their country of nationality and simply chooses not to act. From the day the Ninth Circuit declined to stay Petitioner's removal order on July 18, 2025, the government has had the unfettered authority and ability to execute Petitioner's removal order to Nigeria. In fact, under the INA, it was *required* to do so within the 90-day removal period. *See* 8 U.S.C. § 1231(a)(1)(A) ("[W]hen [a noncitizen] is ordered removed, the [Secretary of the Department of Homeland Security]  shall remove the [noncitizen] from the United States within a period of 90 days . . . .") But it has taken no action. Why? Respondent offers no answer. If DHS is awaiting the outcome of Petitioner's Ninth Circuit appeals before removing her,

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS – 7

Respondent does not say so. On the contrary, DHS presumably opposed Petitioner's application for a stay of removal so that it could remove her without delay. But nine months later, Petitioner has not been removed, and "Respondents identify no travel documents, no coordination with Nigerian authorities, and no anticipated timeline for removal." Dkt. No. 7 at 7. Without any showing from Respondent that it ever has or ever will work toward Petitioner's removal, the Court cannot determine that there is a significant likelihood of removal in the reasonably foreseeable future. *See, e.g.*, *Yukseloglu v. Bondi*, No. C26-467, 2026 WL 617367, at *3 (W.D. Wash. Mar. 5, 2026) (finding, in part, that removal was not reasonably foreseeable where Respondents offered no evidence of likelihood of removal, and only provided "generalized representations without evidence"); *Daneshfar v. Facility Adm'r.*, No. C25-1708, 2025 WL 4037745, at *2 (W.D. Wash. Dec. 15, 2025) (finding, in part, that removal was not reasonably foreseeable where "the Government offers no evidence whatsoever to suggest that removal is likely in the reasonably foreseeable future"); *Hernandez v. Bondi*, No. C26-486, 2026 WL 252241, at *4 (E.D. Cal. Jan. 30, 2026) (finding, in part, that removal was not reasonably foreseeable where "Respondents provide no evidence that removal is reasonably foreseeable").

Respondent's remaining arguments have nothing to do with whether removal is reasonably foreseeable. Respondent argues that Petitioner's criminal conviction "weigh[s] against release and support[s] the government's continued interest in preventing flight risk during the removal process." Dkt. No. 4 at 11. Next, Respondent points to Petitioner's denied stay of removal as further reason to deny the request. *Id*. But neither of these reasons actually gives insight as to whether removal is reasonably foreseeable.

Petitioner has therefore shown that her detention has become indefinite. After nine months of unexplained inaction, and with no suggestion from Respondent as to why or when inaction might suddenly be replaced by action, the Court must agree that "[t]he Government's

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS – 8

justification for detention has collapsed." Dkt. No. 1 at 9. Where Petitioner's detention is "no longer reasonably related to removal" and has "become[] prolonged without adequate justification," it has become unlawful. *Id.* at 10 (citing *Prieto-Romero*, 534 F.3d at 1062–63 (9th Cir. 2008)). A writ of habeas corpus is thus warranted with respect to Petitioner's ongoing detention.

**B.      Remaining Grounds for Relief**

Because the Court finds that Petitioner's detention is unlawful under *Zadvydas* and orders her immediate release, it need not reach her remaining claims, which are alternate arguments for release. *See* Dkt. No. 1 at 6–12.

**IV.      CONCLUSION**

Accordingly, Petitioner's Petition for Writ of Habeas Corpus (Dkt. No. 1) is GRANTED. It is hereby ORDERED:

(1)      Respondent and all their officers, agents, employees, attorneys, and persons acting on their behalf or in concert with them:

    (a)      SHALL release Petitioner from detention **within twenty-four (24) hours** under appropriate conditions of release;

    (b)      SHALL submit to the Court, **within forty-eight (48) hours** of Petitioner's release from detention, a declaration or status report confirming that Petitioner has been released from custody and informing the Court of the date and time of her release.

Dated this 11th day of May, 2026.

Tana Lin
United States District Judge